UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RODNEY HUGH WINCH, | ) |
| | ) CASE NO. C12-2246-RAJ-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN[1], Acting | ) APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff Rodney Hugh Winch proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted for Michael J. Astrue as the defendant in this suit.

REPORT AND RECOMMENDATION
PAGE -1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1961.[2] He has a GED and previously worked as a welder. (AR 25.)

Plaintiff filed an application for Disability Insurance Benefits (DIB) and SSI on November 1, 2010, alleging disability beginning June 7, 2003. (AR 18.) Plaintiff's applications were denied at the initial level and on reconsideration. Plaintiff timely requested a hearing.

On January 26, 2012, ALJ Stephanie Martz held a hearing, taking testimony from plaintiff, and a vocational expert. (AR 31-62.) At hearing, plaintiff amended his alleged onset date of disability to November 1, 2010, and elected to withdraw his claim for DIB. (AR 18, 34.) On February 15, 2012, the ALJ issued a decision finding plaintiff not disabled. (AR 18-26.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on November 14, 2012 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's lumbar degenerative disc disease, chronic obstructive pulmonary disease (COPD), and chronic pain severe. The ALJ found plaintiff's alleged depression and knee pain not medically determinable impairments. (AR 21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to lift and carry twenty pounds occasionally and ten pounds frequently, able to stand or walk for six hours in an eight hour workday, and sit for six hours in an eight-hour workday, with regular breaks. Plaintiff was found able to frequently climb ramps and stairs, but never climb ladders, ropes or scaffolds. He has an unlimited ability to balance, and can frequently stoop, kneel, crouch, and crawl. Plaintiff must avoid even moderate exposure to pulmonary irritants. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a small products assembler, ticket taker, and library page.

REPORT AND RECOMMENDATION
PAGE -3

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erroneously evaluated the credibility of his testimony about his subjective symptoms and failed to properly evaluate the opinions of Sergey Kukhotsky, PA-C and Tess Moore, M.D. He requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Credibility Assessment</u>

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and

testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff alleged he was unable to work due to chronic back pain, was unable to get out of bed some days, could only sit or stand for 30-40 minutes at one time, and had problems working on his truck or mowing his lawn.  (AR 182, 200.)  While the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged back pain, the ALJ did not fully credit plaintiff's statements concerning the "intensity, persistence and limiting effects of those symptoms."  (AR 22.)  She reasoned as follows:

> The claimant's activities of daily living show he is not as limited as he has alleged.  He testified that he lives with his mother, and he takes her grocery shopping and to the mall.  He goes shopping in thrift stores for cards and matchbox cars that he collects, and he does this for a couple of hours per day, two or three times a week.  He testified that when he takes his mother to the mall to window shop, he walks around with her for a while, and then he sits and waits for her.  He reported that he is able to prepare his own meals daily, mow the lawn, and take out the garbage.   He is able to drive, and he goes shopping in stores for groceries.  He stated his hobbies were watching television, shopping for cars and collecting, and that he was able to watch television every day and he performed that activity very well.
>
> For all of the claimant's impairments, there is little evidence of treatment for his complaints.  In terms of the claimant's alleged back pain, an x-ray of the claimant's lumbar spine showed severe disc space narrowing, degenerative change, and facet arthropathy at L5-S1, with small bony foramina.  The claimant's treatment provider noted that an MRI did not show nerve impingement or any explanation for the claimant's lower extremity pain. The claimant was examined by Jeanine Godec at the Seattle Pain Center.  Ms. Godec noted that the claimant had a full cervical range of motion, and straight leg raising tests were negative bilaterally.  The claimant's motor strength was within normal limits, and sensation was intact to normal and light touch, pinprick, vibratory sense, and joint position sense in the upper and lower extremities equally.   The claimant did not exhibit any pain behavior and his gait was non-antalgic.  The claimant's lumbar range of motion was good, with little

> pain elicited by the examination. The claimant was tender and had right paraspinal muscle spasms, but he had no pain over the SI joints or the facets.
>
> The claimant reported that his symptoms were relieved by over the counter medication. On June 27, 2011, the claimant reported that his back pain was stable, but he was having a moderate amount of pain, mostly in the morning. He reported that he felt "OK" during the day. The claimant reported that physical therapy helped his back some, and pain medications helped him get around and do chores around the house.

(AR 22-23, citations to record omitted.)

Plaintiff argues the ALJ erred by failing to specify how the record is inconsistent with his reported activities, or how the activities provide transferrable work skills. However, the ALJ reasonably contrasted plaintiff's assertion of a complete inability to work, an inability to get out of bed on some days, and an inability to sit or stand for more than 30-40 minutes at a time with his reported ability to drive, take his mother to the mall for trips of one to two hours, shop in thrift stores for several hours two to three times per week, prepare his own meals, mow the lawn, take out the garbage, and watch television every day. While one does not need to be "utterly incapacitated" in order to be disabled, *Vertigan*, 260 F.3d at 1050, a claimant's activities may be grounds for discrediting his testimony "to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012).

Plaintiff also disputes the ALJ's reliance on his lack of treatment for his back condition, arguing "[t]he record suggests" he did not have insurance prior to early 2011, and disputing the determination he did not treat "in the period in which [he] claims disability, at least since obtaining insurance." (Dkt. 13 at 6.) He points to a chart note generated by Sergey Kukhotsky PAC on May 13, 2011 that states "pt is trying to get DSHS for low back pain, bilat

knee pain, SOB (COPD) and high blood pressure", arguing this note shows he did not have treatment because he did not have insurance. (AR 248-49.)

The argument, however, is unpersuasive. An ALJ may consider lack of treatment in discounting pain testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.") Although plaintiff claims disability as of November 1, 2010, he admits he did not seek or receive any treatment prior to early 2011. The chart note itself was generated in the course of a visit to a medical provider in May 2011 (prior to obtaining DSHS benefits), and does not explain why plaintiff did not previously seek treatment for a back condition he asserts has completely prevented him from working. The inference drawn by the ALJ is reasonable. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

Finally, in evaluating the credibility of plaintiff's complaints of disabling pain, the ALJ cited plaintiff's reports to Mr. Kukhotsky that his symptoms were relieved by over-the-counter medication. (AR 23, 245.) Plaintiff contends this finding is not supported by substantial evidence. However, Mr. Kukhotsky's April 28, 2011 chart note reports: "Symptoms are relieved by over the counter medication: acetaminophen." (AR 245.) On June 27, 2011, plaintiff reported his back pain was stable with a moderate amount of pain mostly in the morning, and he felt "'OK'" during the day. (AR 23 (citing AR 250).) "[P]hysical therapy helped his back some, and pain medications helped him get around and do chores around the house." (AR 23 (citing AR 252).) *See Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir.

2008) ("The record reflects that Tommasetti responded favorably to conservative treatment… Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain.")

The ALJ provided clear and convincing reasons to discount Plaintiff's credibility. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (noting that when evaluating a claimant's credibility, an ALJ may consider, for example: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities"). While plaintiff proffers a different interpretation of the evidence relating to his credibility, he fails to demonstrate the ALJ's interpretation of that evidence was not rational. The Court finds no error in the ALJ's evaluation of plaintiff's credibility.

<u>Medical Opinion Evidence</u>

Plaintiff argues the ALJ failed to properly weigh the opinions of PA-C Sergey Kukhotsky and Tess Moore, M.D. In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and Social Security Ruling (SSR) 06-03p.

In general, more weight should be given to the opinion of a treating physician than to a

non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester*, 81 F.3d at 830. Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

On the other hand, less weight may be assigned to the opinions of "other sources". *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, the ALJ's decision should reflect consideration of such opinions, SSR 06-3p, and the ALJ may discount the evidence by providing reasons germane to each source. *Molina*, 674 F.3d at 1111 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) and *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). *See also* SSR 06-03p (ALJ should explain weight given to other source opinions or otherwise ensure that discussion of the evidence allows for following the ALJ's reasoning "when such opinions may have an effect on the outcome of the case.") *See Turner*, 613 F.3d at 1223-24 (lay testimony from other sources may be expressly disregarded if the ALJ gives germane reasons for doing so).

As a physician's assistant, Sergey Kukhotsky's opinion is evaluated as an "other source." Although plaintiff asserts Dr. Moore was a treating physician, the Commissioner points out (and the ALJ noted) the record does not contain any treatment notes from Dr. Moore. (AR 24.) Her signature appears at the bottom of a Physical RFC Questionnaire filled out by Mr. Kukhotsky on January 14, 2012, shortly before the hearing, but the record does not show

Dr. Moore actually provided any treatment or even met the plaintiff.  (AR 264-69.)   Indeed, Dr. Moore's signature appears "for Kukhotsky" under "Physician Name" in the chart note dated July 13, 2011. (AR 243.)   At any rate, the ALJ's evaluation of the jointly-signed opinion of Mr. Kukhotsky and Dr. Moore stands up under scrutiny regardless of which standard of evaluation is utilized.

The ALJ considered these opinions as follows:

> Sergey Kukhotsky, PA-C completed a DSHS Physical Evaluation form. Mr. Kukhotsky opined that the claimant was limited to sedentary work, with limitations in his ability to balance, bend, climb, crouch, handle, kneel, pull, push, reach and stoop. He also opined that the claimant could stand for 2 hours in an 8-hour workday, sit for 1-2 hours, and lift 15 pounds occasionally and 3-5 pounds frequently.  Mr. Kukhotsky's two opinions are not consistent, and he did not attach a narrative statement to explain either opinion.   For these reasons, Mr. Kukhotsky's opinions are given little weight.
>
> Mr. Kukhotsky also completed a Physical Residual Functional Capacity Questionnaire, co-signed by Tess Moore, M.D.   Mr. Kukhotsky opined that the claimant's back pain was not severe enough to prevent him from doing any job. He opined that the claimant could sit for 30 minutes at one time, for a total of about 4 hours, and he could stand for 15-20 minutes, for a total of about 4 hours in an 8-hour workday.   He opined that the claimant would need to walk around every 30 minutes, for 5 minutes, and he would need to be able to shift positions from sitting, standing or walking, at will.   He opined that the claimant could occasionally lift less than 10 pounds, and rarely lift 10 pounds.   In addition, Mr. Kukhotsky opined that the claimant would miss more than 4 days of work per month.  Mr. Kukhotsky and Dr. Moore did not attach a narrative statement or objective evidence to explain their opinion, and the record does not contain any treatment notes from Dr. Moore.  Furthermore, the opinion is not consistent with the medical record, which shows that on examination the claimant has a largely pain-free range of motion, with no tenderness, no muscle loss.  For these reasons, the opinion of Mr. Kukhotsky and Dr. Moore is given little weight.

(AR 24-25 (internal citations to administrative record omitted).)

Plaintiff disputes the ALJ's interpretation of Mr. Kukhotsky's opinions as inconsistent.

REPORT AND RECOMMENDATION
PAGE -10

The Court agrees with the Commissioner, however, that Mr. Kukhotsky inconsistently endorsed plaintiff's restriction to sedentary work in one report (AR 231) and, on the same day, proffered without explanation an opinion of plaintiff's physical capacity that differs in all fundamental areas of assessment. (AR 236.) Plaintiff's attempt to reconcile the two opinions is not persuasive.

A related deficiency of Mr. Kukhotsky's opinions, the second of which is co-signed by Dr. Moore, is that the opinions are unaccompanied by any narrative or explanatory comments. Despite plaintiff's suggestion to the contrary, it is not the function of this Court to search the chart notes for possible explanations of the providers' opinions, which, in any event, do nothing to explain the discrepancies previously discussed between the two questionnaires.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. *See*, *e.g.*, *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) (a treating physician's opinion may be discounted when it is "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [the claimant's condition], and was based on [the claimant's] subjective descriptions of pain[,]" as well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"). The ALJ here reasonably contrasted the check-the-box opinions of Mr. Kukhotsky and Dr. Moore with those of consulting examiner Dr. Lisa Garrison (AR 218-20), who conducted a physical disability evaluation of plaintiff and supported her opinion with exam findings, and evaluating physician Dr. Guthrie Turner (AR 81-83), who conducted a records evaluation in the course of the disability determination process.

The ALJ is responsible for resolving conflicts in the medical record, *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)), and when evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Court does not find error in the ALJ's consideration of the opinions of Mr. Kukhotsky or Dr. Moore.

## CONCLUSION

For the reasons set forth above, this matter should be AFFIRMED.

DATED this <u>9th</u> day of July, 2013.

/s/ Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge